The judgment of the court was pronounced by
Slidell, J.
This is a petitory action instituted to recover the one undivided half of a certain tract of land, which was purchased by the plaintiff’s husband from the United States during their marriage, and the existence of the community of acquests, which was its consequence. The facts were all admitted in the court below; and the sole question presented is one of law. Does the land in dispute belong to the community, or is it the separate property of the heir of the deceased husband?
The plaintiff and André Langlois intermarried in the year 1818. At the time of their marriage he owned and possessed a tract of land fronting on the *215 Bayou Plaqumine, under a title confirmed by the United States. In May, 1822, during the marriage, he purchased from.the United States, by virtue of his right of preference as front proprietor,the double concession, or lands lying in the rear of his estate.
By the; act of 1811, every person in. Louisiana who owned a tract of land bordering on a riyer, creek, bayou or water course, wás entitled to a preference in becoming the purchaser of the vacant land adjacent to and back of his own tract to a depth of forty arpents. Three years were given to file applications under the provisions of the act. This law was revived and continued in force for two years by the act of 11th May, 1830, and again for eighteen months by the act of 28th February, 1823. ' '
' This legislation was founded upon a just respect for the usage which existed under the'French and Spanish governments, of granting, on application of the proprietors of land fronting on a river or bayou, what was called a double concession, or forty arpents in depth in the rear of the original concession. It was not so much apure liberality on the part of the United States, as a just fulfilment of the reasonable expectation which the grantee under the ancient government had been encouraged to entertain, when he went forth to subdue the wilderness.
Considered in this light, the reviving act of 1820 was a relief from the consequences of an omission to exercise a right existing under the act of 1811, which right, although it derived its legal efficacy from that act, had its earlier moral source in the ancient usages of the former government.
For the ■ purposes, therefore, of our present enquiry, the cause of André Langlois’ being entitled to acquire the back concessions, must be considered as originating before his marriage.
Thé plaintiff relies upon a strict and liberal interpretation of an article of the Code of 1808, which was in force when Langlois purchased the land in dispute from the United States. It is found in the section which treats of the partnership or community of acquets or gains. “This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment; of the produce of the reciprocal labor and industry of both husband and wife; and of the estates which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even though the purchase be only in the name of one of the two, and not of both, because in that case the period of time when the purchase was made is alone attended to, and not the person who made the purchase.” Code of 1808, p. 336, art. 64.
Although no case expressly in point has been cited by counsel on either side, we are of opinion that a recurrence to principles and analogy afford á satisfactory solution of the present question.
Pothier, in his Treatise on Community, lays down the following rule: Les acquéts de chacun des conjoints par marriage ne sont 'conquéts que lorsque le titre ou- la cayse de leur acquisition n’a pas précédé le terns de leur communauté ;, sinon ils sont propres de la communauté. § 151.* He gives numerous examples in illustration of this rule. A .person, says he, who died before my marriage, has left me by will an estate, upon a condition which is not accomplished until after my marriage. The estate is my separate property because *216 the will is my title, and it preceded the marriage. So where I have bought an estate before marriage, at a sum below the half of its just value, and after marriage I give validity to the sale by paying my vendor the residue of the just price, the estate is my separate property. Car ce n’est pas le paiement que j’ai fait du supplément du juste prix, qui est mon titee d’acquisition; c’est la vente qui m’a été faite avant mon mariage. Toullier in treating of the same subject observes: Sous l’empire du code, la propriété est transferrée par le contrat de vente (1583); mais la promesse de vente vaut vente, dit Part 1589, c’est á dire que la promesse de vente oblige précisement celui qui l’a faite de passer le contrat de vente. Cependant la promesse de vente ne transiere point la propriété, comme le contrat. Ainsi, celui á qui á été faite la promesse, n’est point propriétaire avant le contrat; mais, comme son titre, pour conteaindre le promettant álui passer le contrat est antérieur au mariage, l’heritage n’entrera point en communauté, sauf recompense. Toullier, vol. 12, § 180. Pothier gives another illustration in the case of a sale avec faculté de réméré. Par la méme raison, si le parent á qui j’ai succédé, avait venduun héritage avec faculté de réméré, et que depuis sa mort j’ai, en qualité de son héritiér, exercé le réméré, je suis censé avoir cet héritage á titre de succession de mon parent; quoique je n’aiepas trouvé l’héritage méme dans la succession, il suffit que j’y aie trouvé le droit de réméré qui s’est realisé dans cet héritage que j’ai réméré; cet héritage n’est done propre, et en matiére de succession, et propre de communauté, sauf la recompense que je dois a la communauté de la somme que j’en ai tirée pour exercer le réméré. Pothier, Communauté, § 116.
The doctrine is a deduction from the maxim, is qui actionem habit, ipsam rem habere vidotur.
Now, although the illustrations we have cited are not identical with the'one at bar, they present a very strong analogy. It is true that the land was not purchased from the United States until after Langlois' marriage. But the “ cause” of the acquisitions may be fairly considered as having preceded the marriage. It was because he was the owner of the front land; an ownership acquired long before; that under the liberal legislation of Congress he was allowed a preference to enter, and that, too, at a low price, specific lands, which may perhaps have been worth much more.
We, therefore, think the land so acquired was his separate property. The only right of the communily was to a reimbursement of the money paid for it, if it was paid for out of the funds of the community.
J udgment affirmed, with costs.

 The word propre is not used here in its ordinary sense. Pothier explains this in § 105. On appelle propre tout ce qni n’estpas communs, tout oe qui n’est pas entré en eommunauté; un Kéritage est pn-opre de communauté, lorsqu’il appartient a l’un des conjoints sans faire partie des biens de la communauté qu’il a avec Rautre conjoint.